## THE NEW HAVEN TRAP ROCK COMPANY *v.* SEBASTIAN TATA ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued November 9, 1961—decided January 23, 1962

*John W. Barclay,* with whom, on the brief, was *William M. Mack,* for the appellant-appellee (plaintiff).

*Harold J. Eisenberg,* with whom were *Charles Stroh* and, on the brief, *Stephen J. Anderson,* for the appellees-appellants (defendants).

MURPHY, J.   The plaintiff, in 1946, conveyed a piece of property in Plainville to the defendant Tata by a deed which gave the plaintiff the right to repurchase the property if Tata should consider selling it.   In 1960, Tata notified the plaintiff that he had a chance to sell and was giving the notice required.   The plaintiff attempted to exercise its right to repurchase, but Tata informed it that he was not going to sell at that time.   Shortly thereafter, Tata leased the rear portion of the property to the defendant Angelo Tomasso, Inc., hereinafter called Tomasso, for fifty years.   The plaintiff then instituted this action for specific performance of the repurchase agreement and to declare the lease of the property null and void.   The trial court decreed specific performance as to the portion of the property covered by the lease and adjudged the lease void as to that portion.   The plaintiff and both defendants have appealed.

There is relatively little dispute as to the fundamental facts in this case.   The parties take issue with the conclusions of law which the court drew from the facts and primarily assign error in the failure of the court to adopt their claims of law.   The facts material to the determination of this appeal follow.   The plaintiff and Tomasso are competitors in the crushed stone and concrete business, operating quarries and plants in the immediate vicinity of the property in question.   This property, which was purchased by Tata from the plaintiff on August 6, 1946, fronts fifty feet on Woodford Avenue and is approximately 250 feet deep.   The deed to Tata recited that as part consideration for it and as a covenant running with the land, binding on the successors and assigns of Tata and the plaintiff, the latter would have the right to repurchase the

184

premises under the terms and conditions set forth.[1] On May 2, 1960, Tata sent a letter to the plaintiff in which he stated, "I have a chance to sell some of my property on Woodford Avenue and I remember that for the part I bought from you on August 6, 1946, I need to give you notice for sixty days. So I am sending this letter." At that time, Tata

[1] "As part of the consideration for this deed and as a covenant or covenants running with the land herein conveyed, said Releasee [defendant Tata], for himself, his heirs, executors, administrators and assigns, further covenants and agrees with said Releasor [plaintiff], its successors and assigns, as follows: That if at any time during a period commencing with the date hereof and ending 20 years after the death of said Releasee the latter shall consider selling said premises, he shall first give written notice thereof to said Releasor and said Releasor shall have a first option or right to repurchase said premises, including any buildings and improvements placed thereon in the meantime, for a period of 60 days from the receipt of such notice, for their then fair market value. If said Releasor elects to exercise said option and right of repurchase, it shall give to said Releasee written notice thereof within said 60-day period and said Releasee upon receipt of said purchase price shall immediately convey said premises, including any buildings and improvements as aforesaid, to said Releasor by a good and sufficient deed in form and content satisfactory to said Releasor. If within a period of 30 days from the receipt by said Releasee of said notice from said Releasor they are unable to agree as to such purchase price, they shall each select a competent and experienced appraiser and the two appraisers thus selected shall select a third competent and experienced appraiser and the appraisal of any two of said three appraisers shall determine such fair market value and such determination shall be binding upon said Releasor and said Releasee, any expense of said appraisal to be paid equally by said Releasor and said Releasee. If said Releasor shall not exercise said option and right to repurchase within said 60-day period, this agreement, including said option and right to repurchase, shall upon the expiration of said 60-day period wholly terminate and become null and void. If neither said Releasee nor his heirs, executors, administrators or assigns shall consider selling said premises at any time during said period commencing with the date hereof and ending 20 years after the death of said Releasee, then upon the expiration of said period this agreement, including all obligation on the part of said Releasee to perform the same, shall wholly terminate and become null and void."

also owned other property on Woodford Avenue, adjoining the subject property on the east and also on the west. The plaintiff by letter notified Tata on May 17, 1960, that it would like to exercise its option to repurchase the property in issue, and on June 23, 1960, that it elected to exercise its right to repurchase and that it requested immediate conveyance of the property, for which it was ready to pay—all in accordance with the terms of the deed. On June 29, 1960, Tata notified the plaintiff that he was not going to sell the property at that time. On July 15, 1960, the plaintiff filed a copy of its letter of June 23, 1960, in the land records and advised Tata of its opinion of the fair market value of the property. On July 29, 1960, the plaintiff notified Tata of its appointee for appraising the property. Tata did nothing further in respect to the plaintiff's desire to repurchase. On August 3, 1960, he and Tomasso executed an instrument which ostensibly leased the rear half of the property, together with other property owned by Tata, to Tomasso for a term of fifty years. The cash consideration for the lease far exceeded the value of all of the property transferred. The other terms and conditions of the lease were such that Tomasso received all of the rights, privileges, duties and incidents of ownership, with the bare legal title in Tata. The president of Tomasso had first broached to Tata the matter of buying or leasing part of the latter's land five or six years before it was leased.

The trial court concluded that the lease of the rear portion of the subject property was tantamount to a sale and was legally a sale so far as the plaintiff was concerned. The court adjudged the lease of that property void and of no effect as against the plaintiff. With this conclusion we agree. In view

of the competing business interests of the plaintiff and Tomasso, the need of the latter for a spur track to the railroad, the projected future use of some of the property for highway purposes, the period of time which had elapsed since Tomasso first approached Tata concerning the possible purchase or lease of the property, and the reasonable inferences which could be drawn from their conduct, it is obvious that the lease was but a subterfuge by which Tata and Tomasso hoped to circumvent the provisions of the deed by which Tata had acquired title.

The court decreed specific performance of the repurchase agreement in the deed, but only so far as the rear portion of the subject property, the portion which was leased, was concerned. Whether the plaintiff was entitled to a decree of specific performance as to the entire subject property must be determined.

The plaintiff and the defendants agree that the provisions in the deed relating to repurchase by the plaintiff created a preemptive right in the plaintiff rather than a strict option. In this case, however, the wording of the provision differs materially from that which is generally used and is cited in the cases and authorities upon which the defendants rely. Generally speaking, a preemption does not give a preemptioner the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the preemptioner at the stipulated price. 6 American Law of Property § 26.64, p. 507; 7 Thompson, Real Property (Perm. Ed.) § 3573; 2 Powell, Real Property § 244. Here, it was necessary only for Tata to give thought to or entertain the idea of selling. He did not have to actually decide to do so. Tata makes no claim that he did not understand

the meaning of the words used in the covenant. In fact, he could not make such a claim, because in his testimony he stated that he understood the terms of the deed, and he twice said that the plaintiff had the right to buy back if he considered selling. It is not necessary, therefore, to construe the meaning of the terms used in the deed, as it was necessary to do in *Dennen* v. *Searle,* 149 Conn. 126, 131, 176 A.2d 561, and cases cited therein.

The right of the plaintiff to exercise its privilege of repurchasing arose when it received notice from Tata, on May 2, 1960, that he was considering the sale of the property. That notice cannot be construed as applying only to the rear portion which Tata attempted subsequently to lease to Tomasso. A contract, binding on both parties, resulted when the plaintiff by its letter of June 23, 1960, elected to exercise its right to repurchase under the terms of the deed. *Parkway Trailer Sales, Inc.* v. *Wooldridge Bros., Inc.,* 148 Conn. 21, 25, 166 A.2d 710; *Hall* v. *Crocker,* 192 Tenn. 506, 510, 241 S.W.2d 548. The plaintiff is entitled to specific performance of the covenant in the deed and a conveyance to it by Tata of the entire (50 by 250 feet) tract which it had sold to him on August 6, 1946.

There is error in part, the judgment is set aside and the case is remanded with direction to render judgment as on file except as modified to include in the decree for specific performance all of the property conveyed by the plaintiff to the defendant Tata by deed dated August 6, 1946, and recorded in the Plainville land records.

In this opinion the other judges concurred.