Leonard B. OWENS et al., Appellants,

v.

**UPPER NECHES RIVER MUNICIPAL WATER AUTHORITY, Appellee.**

No. 771.

Court of Civil Appeals of Texas, Tyler.

Aug. 1, 1974.

Rehearing Denied Oct. 3, 1974.

Zeleskey, Cornelius, Rogers, Berry & Hallmark, James R. Cornelius, Jr., Lufkin, for appellants.

Johnston & Johnston, Palestine, and Potter, Lasater, Guinn, Minton & Knight, F. Wilbert Lasater, Tyler, for appellee.

MOORE, Justice.

This is an appeal from a summary judgment rendered under the provisions of Rule 166–A, Texas Rules of Civil Procedure. In 1956, the plaintiffs, Leonard B. Owens, et al, conveyed the surface estate of approximately 210 acres of land to defendant, Upper Neches River Municipal Water Authority, by warranty deed. The land was purchased by the River Authority for the purpose of erecting a dam and impounding water of the Neches River, creating what is now known as Lake Palestine. As a part of the consideration for the deed, defendant gave the plaintiffs an option to repurchase the land at the same price per acre [1] paid by the River Authority in the event (1) the River Authority should subsequently find that it would not need all of the land for its purposes and (2) determined that the excess land should be sold. After the dam was completed, plaintiffs attempted to exercise their right of repurchase by requesting the River Authority to reconvey them that portion of the land not needed for the erection of the dam and impounding water. In response to plaintiffs' request, the Board of Directors for the River Authority met on August 31, 1972, and passed a resolution, finding and determining that all of the land was needed by the River Authority for the dam, lake bed, roadways, the overflow or flood areas, borrow areas, sanitary land fill areas, sewage disposal facilities and park and recreation areas. The resolution further recited that the River Authority did not desire to sell any part of the land. The plaintiffs then instituted this action for specific performance seeking to have the trial court determine what portion of the land was not needed by defendant for the dam and impounding water and for a decree directing defendant to convey to the plaintiffs that portion not needed solely for such purpose upon tendering defendant the agreed consideration. The cause came on for hearing before the

[1]. Some of the plaintiffs sold their land to the defendant for $30.00 per acre, while others sold for $40.00 per acre.

trial court on a motion for summary judgment filed by defendant alleging that it was entitled to a summary judgment as a matter of law because plaintiffs' option to repurchase was conditioned upon (1) a determination by the River Authority that a portion of the land would not be needed for its "purposes" and (2) a decision by the Authority to sell the land. The motion was supported by affidavits and exhibits showing that neither condition had occurred. In reply to the motion, plaintiffs do deny the fact that neither of the foregoing conditions had occurred, but alleged that the motion should be denied because a fact issue was raised, first upon the question of whether defendant needed all the land, and secondly, that the option agreement is ambiguous thereby creating a fact issue with regard to the intentions of the parties. After a hearing on the motion, the trial court concluded no issue of disputed fact was presented and thereupon rendered a summary judgment in favor of the defendant. From this judgment plaintiffs perfected this appeal. The parties will hereinafter be referred to as they were in the trial court, except defendant will sometimes be referred to as the "Authority."

We affirm the judgment rendered by the trial court.

The Upper Neches River Municipal Water Authority was created in 1953 by the Texas Legislature as a political subdivision of the State with the power of eminent domain. Article 8280–157, Vernon's Ann. Tex.Stat. Under Article 8280–157, supra, (the statute creating the Upper Neches River Municipal Water Authority) and Sec. 51.121 et seq., of the Water Code, V. A.T.S. (formerly Article 7880), the Upper Neches River Municipal Water Authority had the following specific powers and purposes: (1) to store, conserve, protect, distribute, etc. waters from the lake and reservoir, Sec. 13(a); (2) to establish and otherwise provide for public parks and recreational facilities, and to lease lands which it acquires for recreational or concession purposes, Sec. 23; (3) to construct lakes and dams for irrigation, power or other useful purposes, and to protect the sanitary condition, Water Code, Sec. 51.121 et seq; (4) acquire land material, borrow and waste ground by gift, purchase or condemnation, Water Code, Secs. 51, 121 et seq.; and (5) to sell any excess property not necessary to the operation of the District, Art. 8280–157, Sec. 13(d), and Sec. 51.191 of the Water Code.

At the time plaintiffs executed the deeds, the Authority was in the process of condemning the land and in fact had already filed suit against one of the plaintiffs.

The dam was constructed in several stages, with the final stage being completed on or about April 2, 1971. After the completion of the dam, plaintiffs requested the Authority to reconvey that portion of the land conveyed to it by each of the plaintiffs which was not needed for the erection of the dam and impounding water. At the time plaintiffs notified the Authority of their desire to exercise their option to repurchase, only a small part of the land was actually being used by the Authority for the dam and impounding waters. While roads and highways had been constructed across the land, and other parts were being used for the spillway and for recreational purposes, a large part of the land was not being used. According to the affidavit testimony of the plaintiffs, the agents of the Authority advised them that the land was being purchased for the dam and for impounding waters and they were of the impression that the land was being purchased solely for that purpose. While the Authority does not dispute the fact that it had not yet made use of all the land, the Authority's affidavit testimony shows that all the land would be needed in the future for such additional purposes as a waste water treatment plant, recreation areas, overflow and flood areas, sanitary land fill areas, sewage disposal and additional roads.

It is without dispute that shortly after plaintiffs requested the right of repur-

chase, the Authority's Board of Directors met and passed a resolution in which it was determined that all the land would be needed for its purposes and that none of the land would be sold. It is also without dispute that the River Authority had never expressed a willingness to sell, nor had it ever offered any of the land for sale to others.

Plaintiffs did not allege or offer any proof of bad faith on the part of the Authority's Board of Directors in determining that all the land would be needed for its purposes. Nor did they seek to reform the option contract for fraud, accident or mistake.

There is relatively little dispute as to the fundamental facts. The controversy arises over the interpretation of the option contract. Omitting the formal parts, the pertinent provisions of the option agreement read as follows:

"You have executed and delivered to Upper Neches River Municipal Water Authority a deed to subject tract of land for the purpose of erecting a dam and impounding water at what is known as the Blackburn Project.

"It is understood and agreed, as a part of the consideration for the sale of this tract, that in the event Upper Neches River Municipal Water Authority finds it will not need all of said tract for its purposes, and determines that said excess land shall be sold, then you shall be notified of such decision and shall have the option to purchase said excess land at the rate of $40.00 Dollars per acre. * * *

"It is contemplated that Upper Neches River Municipal Water Authority will determine within two (2) years of the completion of the dam * * * whether or not an excess of land in subject tract exists; however, should no excess be found at that time, then this agreement shall continue in force for a period

of ten (10) years after completion of the dam.

\* \* \* \* \* \*

"This commitment is made by virtue of a resolution approved by the unanimous vote of the Directors of Upper Neches River Municipal Water Authority at a special meeting held at its regular meeting place in Jacksonville, Texas, on September 15, 1956, which resolution is recorded in Volume II of the Minutes of the Board of Directors of said Authority."

In their first point of error, plaintiffs contend that the trial court erred in granting the Authority a summary judgment because a genuine issue of fact exists with reference to whether all the land was needed for defendant's purpose of erecting a dam and impounding water. In connection with this point, plaintiffs interpret the contract to mean that defendant unconditionally offered to reconvey them all land which was not in fact needed solely for the purpose of the dam and impounding water. Therefore, they say that when they accepted the offer and tendered the consideration, the contract was consummated and that they were entitled to reconveyance of all land not needed solely for the dam and impoundment of water and that a determination of the amount not needed for such purpose constituted a fact issue for the determination by the court. We are not in accord with their proposition.

"In the construction of written contracts, it is a firmly established rule that the intention of the parties must be determined primarily from the body of the instrument itself. Accordingly, if the terms of an instrument clearly invest it with a definite legal meaning, all necessity for inquiry as to the intent of the parties is then at an end. This rule is based on two fundamental principles: first, in the absence of fraud or mutual mistake, all purposes, plans, and intentions of the parties may, quite properly, be conclusively presumed to have been embodied in their written agree-

ment; secondly, the parties may be held chargeable, also quite properly, not only with knowledge of the meaning of the terms used in the agreement, but also with knowledge as to the legal effect of the contract created by the use of such terms. Therefore, where a written contract is clear and certain, and where there is no showing of fraud or mistake, the instrument alone will be deemed to express the intention of the parties and will be enforced as written, no matter what their actual intention may have been." 13 Tex. Jur.2d Contracts, Sec. 123, p. 290. While the foregoing rules are usually applied in the construction of bilateral contracts, we think they are equally applicable in the construction of unilateral contracts, such as the one involved here.

■■■ Upon applying the foregoing rules to the unilateral agreement in question, we think it is clear that the offer made by the Authority does not amount to an unconditional option contract. This is true because of the lack of an unconditional offer creating in the plaintiffs the immediate right of acceptance. Corbin on Contracts, Sec. 261. The so-called "option" contract, when construed from its four corners, appears to be nothing more than a conditional preferential right of first refusal. In contending that the agreement amounts to an unconditional offer to buy all land not actually used for the purpose of the dam and impounding water, plaintiffs rely on the language of the first paragraph of the letter agreement and ignore all other parts. As we view the agreement, plaintiffs' interpretation is wholly untenable. A contract must be read, considered and construed in its entirety, so that all provisions of the agreement will be taken into consideration and construed together to ascertain the meaning and effect of the instrument. 13 Tex.Jur.2d Contracts, sec. 113, p. 269. Upon applying the foregoing rule to the agreement in question, it becomes abundantly clear that the agreement does not amount to an unconditional offer to allow plaintiffs to re-

purchase all land not needed solely for the purpose of erecting the dam and impounding water. While the first paragraph of the agreement does mention that the land was conveyed to the Authority for the "purpose of erecting a dam and impounding water," it appears that this is nothing more than a mere preliminary statement and does not constitute any part of the offer. The offer is to be found in the second and subsequent paragraphs. As we view the agreement, the offer is clear and certain. The Authority merely offered to give the plaintiffs a preferential right to repurchase the land not needed for any of its "purposes", conditioned upon the happening of two distinct conditions precedent, to-wit: (1) a determination by the Authority that a portion of the land would not be needed for its "purposes" and (2) a determination by the Authority that the excess land would be sold. We fail to find anything in the agreement indicating that the Authority intended to make an unconditional offer giving the plaintiffs the right to repurchase all the land except that needed for the dam and the impoundment of water. Since the Authority made no such offer, plaintiffs' attempted acceptance amounted to nothing more than a counter offer which was not accepted by the Authority and hence no contract was created. It therefore follows that no disputed issue of material fact exists as to the amount of land not needed by the Authority for the purpose of the dam and impoundment of water.

Plaintiffs next contend that the agreement is ambiguous, thereby raising a fact issue as to the true intentions of the parties. The ambiguity, they argue, lies in the use of the word "purpose" in the first paragraph and in the use of the word "purposes" in the second paragraph. They say the word "purpose", as used in the first paragraph, limits the use of the land to the erection of the dam and impounding water and they were to have the right to repurchase all remaining land. Whereas in the second paragraph, the agreement stipu-

lates that plaintiffs were to have the right to repurchase only that portion of the land not needed by the Authority for any of its "purposes" authorized by the statute. Plaintiffs thus say that the agreement is subject to more than one reasonable meaning.

If a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous. It follows that parol evidence is not admissible to render a contract ambiguous, which, on its face, is capable of being given a definite certain legal meaning. This rule obtains even to the extent of prohibiting proof of circumstances surrounding the transaction when the instrument involved, by its terms, plainly and clearly discloses the intention of the parties, or is so worded that it is not fairly susceptible of more than one legal meaning or construction. Lewis v. East Texas Finance Co., 136 Tex. 149, 146 S.W.2d 977, 980.

The converse of this is that a contract is ambiguous only when the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper one. Universal C. I.T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154.

After applying the foregoing rules to the letter agreement in question, we have concluded that the agreement is not ambiguous. The letter agreement amounts to nothing more than an offer on the part of the Authority. The offer, as set forth in the second paragraph, grants plaintiffs a right of first refusal only to that portion of the land which the Authority determined was not needed for its "purposes." The first paragraph contains no offer or promise. It amounts to nothing more than a mere preliminary statement leading up to the offer which followed in the second paragraph. If the first paragraph can be said to create any doubt as to what part of

the land defendant offered to reconvey, the second paragraph is sufficient to completely eliminate all doubt as to what land the defendant intended to grant plaintiffs a right of repurchase. Since the letter agreement is clear and unambiguous, the intent of the parties becomes immaterial. It follows therefore that no material issue of disputed fact is presented with regard thereto.

By other points of error plaintiffs contend that even though the letter agreement be construed as an offer to reconvey only so much of the land as determined by the Authority not to be needed for its "purposes," a material fact issue is presented with reference to whether defendant acted arbitrarily or in bad faith in making such determination and in refusing to reconvey any part of the land. In this connection plaintiffs take the position that the amount of land actually needed constitutes a question of fact and that such question must be measured by the objective standard. In reply, defendant says that the question of need is to be made by the Authority subjectively as stipulated by the terms of the agreement. Therefore it says that since the Authority has determined a need for all the land and there is no evidence of bad faith, no disputed issue of fact is raised. We agree with the position taken by defendant.

The agreement clearly provides that the question of need was to be at the discretion of the Authority. Under the terms of the agreement, plaintiffs were granted a right of refusal for a period of ten years after completion of the dam but only in the event the Authority determined it did not need all of the land for its "purposes." Whether or not all of such land was needed, or would be needed, is a problem which involves the individual and collective judgment of those charged with the responsibility of carrying out the purposes of the Authority. The present and furture need for the land is a matter requiring much study and long-range plan-

ning. In these circumstances the agreement cannot be construed as a stipulation of what a court or jury might pronounce as needed as measured by the objective standard, but must be interpreted as meaning the need for the land as found by the Authority's Board of Directors. Wynkoop Hallenbeck Crawford Co. v. Western Union Telegraph Co., 268 N.Y. 108, 196 N. E. 760 (1935); Restatement of Contracts, Sec. 265. Plaintiffs concede that no fraud or bad faith existed at the time of the agreement. There being no question of bad faith on the part of the Authority in subsequently determining that all of the land would be needed, such determination is final and binding on plaintiffs as a matter of law. Goltra v. Weeks, 271 U.S. 536, 46 S.Ct. 613, 70 L.Ed. 1074 (1925).

Having determined that the first condition imposed by the agreement creates no disputed issue of fact, we come to the second condition wherein the Authority reserved the right to elect not to sell.

■ Generally speaking, a preemption or a preferential right of first purchase does not give the promisee the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the preemptioner at the stipulated price. 6 American Law of Property, Sec. 26.64, p. 507; 7 Thompson, Real Property (Perm. Ed.) Sec. 3573; 2 Powell, Real Property, Sec. 244, and New Haven Trap Rock Company v. Tata, 149 Conn. 181, 177 A.2d 798 (1962). Thus, no material issue of disputed fact is created with regard to the second condition.

Other points brought forward by the plaintiffs have been considered and found to be without merit.

■ Being of the opinion that the record establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of plaintiffs' cause of action, we think the trial court properly disposed of the cause by entry of summary judgment. Gibbs v. General Motors Corporation, 450 S.W.2d 827 (Tex.Sup.1970).

Affirmed.