**WARREN BROTHERS COMPANY,**
**Appellant,**

v.

**A.A.A. PIPE CLEANING COMPANY,**
**Appellee.**

**No. 17626.**

Court of Civil Appeals of Texas,
Houston (1st Dist.).

May 15, 1980.

Rehearing Denied June 26, 1980.

Prappas, Moncure, Harris & Termini, Brantly Harris, Houston, for appellant.

Bresenhan, Martin & Wingate, Albert H. Wingate, Houston, for appellee.

Before PEDEN, EVANS and DOYLE, JJ.

PEDEN, Justice.

Warren Brothers Company, defendant below, appeals from a judgment awarding A.A.A. Pipe Cleaning Company $22,044.34 for pipe cleaning services furnished pursuant to a proposal dated March 16, 1970. A.A.A. contends that the prices charged for the labor and services were reasonable and agreed to by Warren Brothers but that $22,361.48 of such charges remain unpaid. Warren Brothers argues that the parties contracted to calculate the charges in question on a lineal foot basis rather than by the hour, as A.A.A. billed them.

Warren Brothers was under contract with the State of Texas to construct the interchange at the intersection of North Belt Boulevard and U. S. Highway 59. Because North Belt was three to four feet below ground level at that intersection, a network of pipes was installed to drain water into a wellhouse where it could be removed by a pump. A second network of pipes drained the frontage roads and the main lines of Highway 59.

On March 16, 1970, A.A.A. submitted a proposal to Warren Brothers which provided: "Furnishing Sewer Jets and a Sewer Vac to clean 18″ through 48″ sewer lines on North Belt Freeway job." The job location notation on this proposal reads "North Belt Freeway." A Warren Brothers purchase order dated March 17, 1970, describes the job as "N Belt 59," and provides for compensation on an hourly basis plus a flat fee for cleaning the wellhouse.

Pursuant to this purchase order, A.A.A. cleaned the pipe draining into the wellhouse, and cleaned the wellhouse itself on April 3rd and 4th. Other pipe running from the wellhouse was cleaned for up to a week following the cleaning of the wellhouse.

Warren Brothers then issued a second purchase order which referred to the job as "N Belt," and provided that A.A.A. would "Clean remainder of Storm Lines on Rt. 59N 20 cents per Lineal Foot. Minimum of Three Sewer Sets After 4–8–70 Per Day. 10 hrs. 6 days." This purchase order is undated, but apparently it was issued on April 6, 1970.

William Dewey, general manager for A.A.A. in 1970, testified that between April 6th and May 9th, A.A.A. worked on the storm lines on Highway 59. Only two A.A.A. invoices, PX-7, dated April 9, and PX-8, dated April 30, refer to the April 6 purchase order. PX-7 is the only A.A.A. invoice in evidence in which charges for amounts owed by Warren Brothers are made by the lineal foot. These charges are for work performed from April 6 through April 8. All other charges on A.A.A. invoices to Warren Brothers are computed by the hour.

It is the position of Warren Brothers, supported by testimony of its former project superintendent Dale Mantooth, that all work performed by A.A.A. on Highway 59 was intended by the parties to be billed under the April 6 purchase order, on a lineal

foot basis. The opposing contention of A.A.A., supported by the testimony of Mr. Dewey, was that only the small sewer lines that run beneath Highway 59 were intended by the parties to be cleaned pursuant to the April 6 purchase order at the rate of 20 cents per lineal foot. A.A.A. asserts that all other work, whether performed on the North Belt or on Highway 59, was intended by the parties to be billed by the hour under the first purchase order, and that A.A.A. based its petition solely upon the agreement of Warren Brothers to the terms of that March 16 proposal.

The case was submitted to a jury on two special issues, the first of which asked the jury to find "the unpaid balance of the amount Warren Brothers Company agreed to pay to A.A.A. Pipe Cleaning Company for the work done by A.A.A. Pipe Cleaning Company for Warren Brothers Company pursuant to the contract of March 16, 1970 and purchase order B-04501 [PX-1] in 1970 as shown by the evidence." The jury answered "$22,044.34." In answer to the second special issue the jury found that Warren Brothers had not paid or tendered payment to A.A.A. at the agreed rate for all work done pursuant to the March 16 proposal. Judgment was entered pursuant to this verdict.

Appellant's third point of error is:

The trial court erred in admitting in evidence the testimony of William Dewey that the second purchase order was only intended to cover cleaning small lines that ran across Highway 59 over Defendant's objection that such testimony violated the parol evidence rule, inasmuch as the purchase order by its terms required Plaintiff to 'Clean Remainder of storm lines on RT 59 N 20 cents per lineal foot' and not merely the small lines running across the highway.

Dewey testified, over objection, at several points in the trial that the April 6 purchase order was intended by the parties as an agreement that A.A.A. would clean only the small sewer lines that run under Highway 59 at the rate of 20 cents per lineal foot.

Volume 2 of Ray, Texas Law of Evidence (3rd ed. 1980) Sec. 1611, at 318–320, contains the following passage concerning the application of the parol evidence rule:

If, under the foregoing principles, the instrument appears, as read in the light of the surrounding circumstances, to be intended, not as a complete and all-inclusive embodiment of the terms relating to the subject matter of the instrument, but as a professedly partial or incomplete memorial or memorandum, then it may be supplemented by proof of other oral or written terms outside the document. Such is the case . . . where the instrument is a mere skeleton note or reminder obviously not designed to be complete. Likewise the indefiniteness of the words used in the instrument has been held to show that as to such terms the parties did not intend to supersede prior agreements as to the features covered by such vague terms.

Ray points out that the Texas cases dealing with incomplete instruments "shade by imperceptible degrees into those where the use of extrinsic evidence is justified by ambiguity in some term of the instrument," Sec. 1611, n. 27, at 320, and states in Sec. 1685, at 412, that "(p)arol evidence is admissible to explain ambiguities apparent on the face of a writing. This proposition is well established, and frequently applied . . ."

The Texas Supreme Court held in *Magnolia Warehouse & Storage Co. v. Davis & Blackwell*, 108 Tex. 422, 195 S.W. 184, 185 (1917):

. . . one of the exceptions to the general [parol evidence] rule is that if the written instrument itself shows to be either ambiguous or incomplete, parol testimony is admissible to show what the real contract was to the extent necessary to remove the ambiguity, and to make the contract complete in its terms which show to be incomplete. The exception to the general rule is as well settled as is the rule itself.

Where a writing is incomplete or ambiguous, parol evidence is admissible to

explain the writing or to assist in the ascertainment of the true intention of the parties insofar as the parol evidence does not alter or contradict any part of the written memorandum in question.[1] In *Henry v. Powers*, 447 S.W.2d 738, 742 (Tex.Civ.App. 1969, no writ), we stated:

Parol testimony as to the circumstances under which contracts were entered into is admissible for the purpose of ascertaining the real intention of the parties.

\* \* \* \* \* \*

The Supreme Court of Texas has held that where the language of a contract is ambiguous, the court can look to the record as a whole to determine just what the parties intended by the language employed. The court also stated: 'No principle of interpretation is more firmly established than that great, if not controlling weight should be given by the courts to the interpretation placed upon a contract of uncertain meaning by the parties themselves. Courts rightfully assume that the parties to a contract are in the best position to know what was intended by the language employed.' *James Stewart & Co. v. Law*, 149 Tex. 392, 233 S.W.2d 558 (1950).

▪ We hold that the testimony of Mr. Dewey was properly admitted by the trial court. On its face, PX-3 appears to have been intended not as a "complete and all-inclusive embodiment of the terms" relating to the agreement between the parties, but rather as an "incomplete memorial or memorandum." Ray, supra Sec. 1611, at 318.

▪ In addition, the terms of that purchase order, particularly the specification of the storm lines to be cleaned as the "remainder . . . on RT 59 N," are so general as to logically encompass either of the two interpretations offered by the parties. A contract is ambiguous when the application of pertinent rules of interpretation to the face of the instrument leaves it

genuinely uncertain which one of two or more meanings is the proper one. *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154 (1951); *Owens v. Upper Neches River Municipal Water Authority*, 514 S.W.2d 58 (Tex.Civ.App. 1974, writ ref'd n. r. e.). Appellant's third point of error is overruled.

The appellant's other points of error are:

1. The judgment is erroneous because the evidence is insufficient to support the jury's answer to Special Issue No. 1 that the sum of $22,044.34 is the unpaid balance of the amount Defendant agreed to pay Plaintiff for work done pursuant to the contract of March 16, 1970 and the first purchase order.

2. The trial court erred in failing to grant Defendant's motion to disregard the jury's answer to Special Issue No. 1 because there is no evidence that the sum of $22,044.34 is the unpaid balance of the amount Defendant agreed to pay Plaintiff for work done pursuant to the contract of March 16, 1970 and the first purchase order.

The A.A.A. claim was based upon nine invoices introduced into evidence as plaintiff's exhibits 4 through 13. The total amount of the invoices is $23,831.89, of which $290.80 was based upon computations by the lineal foot. Neither party complains that the jury found a different amount, $22,044.34. Appellant's argument concerning the invoices introduced by A.A.A. asserts only that they are hearsay and so cannot support the judgment of the trial court.

▪ Appellee contends that the invoices, plaintiff's exhibits 4–13, were properly admitted into evidence under the Business Records Act, Article 3737e, V.T.C.S. Sections one and two, the pertinent parts of that article provide:

---

1. *See: Home Indemnity Company v. Draper*, 504 S.W.2d 570, 578 (Tex.Civ.App. 1973, writ ref'd n. r. e.); *Allstate Insurance Co. v. Furr*, 449 S.W.2d 295 (Tex.Civ.App. 1969, writ ref'd n. r. e.); *Olan Mills, Inc. v. Prince*, 336 S.W.2d 186 (Tex.Civ.App. 1960, no writ); *Geyser Ice Co. v. Sharp*, 87 S.W.2d 883, 886 (Tex.Civ.App. 1935); *Pyron v. Brownfield*, 269 S.W. 202 (Tex. Civ.App. 1925, writ dism'd).

Section 1. A memorandum or record of an act, event or condition shall, insofar as relevant, be competent evidence of the occurrence of the act or event or the existence of the condition if the judge finds that:

(a) It was made in the regular course of business;

(b) It was the regular course of that business for an employee or representative of such business with personal knowledge of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record;

(c) It was made at or near the time of the act, event or condition or reasonably soon thereafter.

Section 2. The identity and mode of preparation of the memorandum or record in accordance with the provisions of paragraph one (1) may be proved by the testimony of the entrant, custodian, or other qualified witness even though he may not have personal knowledge as to the various items or contents of such memorandum or record. Such lack of personal knowledge may be shown to affect the weight and credibility of the memorandum or record but shall not affect its admissibility.

Dewey, then the general manager of A.A.A., testified as to how the invoices, and the work tickets upon which they were based, were prepared. He said the men came in from the job in the evening, made out work tickets, and turned them in to the office. A young lady in the office took the information off the work ticket, compiled the invoice and sent the invoice and a copy of the work ticket to whomever Warren Brothers had done the work for. The people that prepared the work tickets were under his supervision, but the girl in the office was not. These invoices were prepared within a day or so after the work tickets were filled out. He also testified that the work tickets contained in Plaintiff's Exhibit 22 were prepared on the job each day by the foreman of the crew whose work they reflect. Each of the foremen, who worked

for Dewey, brought the work tickets into the office and turned them into the administrative secretary. It was in the regular course of the employee making these tickets to make them on the day the work was done.

At trial, counsel for Warren Brothers stated that he had no objection to the introduction into evidence of the invoices, plaintiff's exhibits 4–13. He later stated that his objection to the admission of the work tickets they were based on (plaintiff's exhibit 22) did not "go with whether they comply with Article 3737e . . ."

In *Mew v. J & C Galleries, Inc.*, 554 S.W.2d 249 (Tex.Civ.App. 1977, writ ref'd n. r. e. Tex., 564 S.W.2d 377), counsel for the appellant stated that he had no objection to the admission into evidence of certain exhibits. On appeal, however, appellant argued that the exhibits were inadmissible hearsay. The Dallas Court held:

We conclude that defendants have waived any complaint based upon lack of the predicate required by article 3737e. To allow defendant's counsel to state specifically that he has no objection to the admission of these exhibits and then later complain of plaintiff's failure to lay a proper predicate would permit a party to benefit from error for which his counsel is, in part, responsible due to his affirmative acts . . . Counsel's statement that he had no objection to the admission of the exhibits is, in effect, an agreement that the proper predicate can be laid and that further proof of the predicate need not be presented.

*See also: Loper v. Andrews*, 395 S.W.2d 873 (Tex.Civ.App. 1965), aff'd on other grounds, 404 S.W.2d 300 (Tex. 1966); *Missouri Pacific Railroad Company v. Watson*, 346 S.W.2d 640, 641 (Tex.Civ.App. 1961, writ ref. n. r. e.).

We also consider that Mr. Dewey testified to facts sufficient to lay the necessary predicate under Article 3737e. *University Savings and Loan Assn. v. Security Lumber Co.*, 423 S.W.2d 287 (Tex. 1967) and *Fuqua v. Moody & Clary Co.*, 462 S.W.2d 321 (Tex. Civ.App. 1970, no writ).

Appellant also contends that the evidence establishes no possible basis for a finding that the work on all the remaining storm lines on Highway 59 was performed by A.A.A. pursuant to the March 16 proposal upon which A.A.A. based its cause of action. However, the March 17 purchase order reflects the notation "JOB: N Belt 59". Mr. Dewey testified that the term "North Belt" alone included both the work on the North Belt under the Highway 59 interchange and on the remainder of Highway 59. He further testified that the March 17 purchase order authorized A.A.A. to clean the storm lines on Highway 59 and the North Belt interchange. The jury was entitled to conclude in answering special issue number one that modification of the terms of that first purchase order pertained solely to the small lines running underneath Highway 59.

The appellant's first two points of error are also overruled.

Affirmed.