Opinion issued June 17, 2010.

 

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00331-CV

———————————

Robert Conrad, Appellant

V.

Horace
Hebert and Billie Hebert, Appellees



 



 

On Appeal from the 60th District Court

Jefferson County, Texas[1]



Trial Court Case No. B-177,392-A

 



 

MEMORANDUM  OPINION

          Appellant,
Robert Conrad, appeals from a judgment rendered upon cross-motions for summary
judgment.  We determine whether the trial
court erred in implicitly determining as a matter of law that no enforceable
settlement agreement existed between Conrad and appellees, Horace and Billie Hebert.  We affirm.

BACKGROUND

          In
August 2005, Conrad was driving the car of his parents, Eric and Tammy Hanusch,
when he collided with the car driven by the Heberts.  The Heberts were injured in the
accident.  The Hanusches’ car involved in
the accident was insured by Farmer’s Insurance Group (“Farmers”).

          On
June 5, 2006, the Heberts each sent a letter to April Bossley, Farmers’s
adjuster, offering to settle their claims. 
The pertinent portions of the offer letters read as follows:

          I offer to settle the claims I have for the injuries I
received resulting from the collision in exchange for payment to me of Robert
Conrad’s policy limits.  Payment must be
made to me on or before 5:00 p.m., July 5, 2006.  In exchange for payment of policy limits, I
will execute a full and complete release in favor of Robert Conrad for all
claims I have arising out of the collision. 
I will also pay all subrogation amounts I may owe with the
proceeds.  There are no hospital
liens.  You can make the check payable to
Trailblazer Health Enterprises, LLC, and me if you choose.

 

          If payment is not made on or before that date and time,
this offer will expire and no further offer will be forthcoming. . . .

 

          Bossley
responded to each of the Heberts by separate letters dated June 14, 2006.  Those letters, in pertinent part provided:

          I am extending an offer of $25,000.00, which is our policy
limits, to settle your bodily injury claim in exchange for a full and final
release.

 

          Please find the enclosed release form for your injury
claim.  The amount on the release is the
total amount of the claim.  Upon receipt
of this form, we can issue your settlement check. . . .

 

          Please sign and mail the form back to me in the enclosed
return envelope.  Please make sure your
spouse also signs the release, before mailing it back to me. . . .

 

          The
release forms attached to Bossley’s letters provided in relevant part that

FOR AND IN CONSIDERATION OF
THE SUM OF TWENTY FIVE THOUSAND DOLLARS AND NO CENTS ($25,000), receipt of
which is acknowledged, I release and forever discharge the insurer[,] Eric
Hanusch, Tammy Hanusch, and Robert Conrad, their principals, agents and representatives
from any and all rights, claims, demands and damages of any kind, known or
unknown, existing or arising in the future, resulting from or related to
injuries and property damage arising from an accident that occurred on August
20, 2005 . . . .

 

. . .

 

Further, I agree to
reimburse and indemnify all released parties for any amounts which any
insurance carriers, government entities, hospitals or other persons . . . or
organizations may recover from them in reimbursement for amounts paid to me or
on my behalf as a result of this accident by way of contribution, subrogation,
indemnity, or otherwise. . . .

 

          It is
undisputed that the Heberts did not sign the releases, did not respond to
Bossley’s June 14 letters, and did not return her calls to discuss her letters.  It is also undisputed that neither Farmers nor
Conrad paid the Heberts anything by the July 5, 2006 deadline.

          After
the deadline had passed, the Heberts sued Conrad.  Their “live” pleading asserted claims for
negligence.  In his answer, Conrad
pleaded that the Heberts’ suit was barred because the parties had settled these
claims.  Conrad also filed a
counterclaim, in which he sought enforcement of the alleged settlement
agreement.  

          Conrad
moved for traditional summary judgment on his defensive and affirmative
pleadings based on the alleged settlement agreement.  The Heberts moved for partial, traditional
summary judgment on Conrad’s counterclaim and his defense based on the alleged
settlement agreement, contending that (1) Conrad failed to accept the offers
because he failed to pay the policy proceeds before the offers’ stated deadline
and (2) Bossley’s June 14 letters constituted counteroffers, and thus
rejections of the settlement offers, because the release contained material
terms that differed from those in the settlement offers.  They also objected to portions of Conrad’s
summary-judgment evidence.  Conrad file a
supplemental summary-judgment motion, raising similar grounds to those raised
in his opening motion and contending that the releases’ terms were not
requirements or conditions; he also asserted various objections to the Heberts’
summary-judgment evidence.

          The
trial court granted all objections to both parties’ summary-judgment evidence,
granted the Heberts’ motions for summary judgment, and denied Conrad’s
summary-judgment motions.  The trial
court then severed the claims and defenses that were the subject of summary
judgment from the Heberts’ negligence claims. 
Conrad appeals.

SETTLEMENT

          In
issues one and two, Conrad argues that the trial court erred in denying its
summary-judgment motions, and in granting those of the Heberts, because (1)
Bossley’s June 14 letters were valid acceptances and thus created enforceable
settlement agreements and (2) the Heberts breached those settlement agreements
by wrongful conduct that prevented Farmers from funding the settlement before
the deadline expired.

A.      Standard of Review

          We
review a trial court’s decision to grant or to deny a motion for summary
judgment de novo.  See Tex. Mun. Power Agency v. Pub. Util. Comm’n of Tex., 253 S.W.3d
184, 192 (Tex. 2007) (citing rule for review of grant of summary judgment and
reviewing denied cross-motion for summary judgment under same standard).  Although a denial of summary judgment is not
normally reviewable, we may review such a denial when both parties move for
summary judgment and the trial court grants one motion and denies the other.  Id.  In our review of such cross-motions, we
review the summary judgment evidence presented by each party, determine all
questions presented, and render the judgment that the trial court should have
rendered.  Id. (citing Comm’r Court v.
Agan, 940 S.W.2d 77, 81 (Tex. 1997)).

          Under
the traditional summary-judgment standard, the movant has the burden to show
that no genuine issues of material fact exist and that it is entitled to
judgment as a matter of law.  Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., Inc., 690
S.W.2d 546, 548 (Tex. 1985).  In deciding
whether there is a disputed material fact issue precluding summary judgment,
evidence favorable to the non-movant will be taken as true, and every
reasonable inference must be indulged in favor of the non-movant and any doubts
resolved in its favor.  Nixon, 690 S.W.2d at 548-49.  A defendant moving for summary judgment must
conclusively negate at least one essential element of each of the plaintiff’s
causes of action or conclusively establish each element of its cross-claim or affirmative
defense.  Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997).  When, as here, the order granting summary
judgment does not specify the grounds upon which judgment was rendered, we must
affirm the summary judgment if any of the grounds in the summary judgment
motion is meritorious.  FM Props. Operating Co. v. City of Austin,
22 S.W.3d 868, 872 (Tex. 2000).

B.      Discussion

          Texas
Rule of Civil Procedure 11 requires that settlement agreements be in writing, a
requirement similar to that under the statute of frauds.  Padilla
v. LaFrance, 907 S.W.2d 454, 460 (Tex. 1995); see Tex. R. Civ. P. 11.  Accordingly, “‘there must be a written
memorandum which is complete within itself in every material detail, and which
contains all of the essential elements of the agreement, so that the contract can
be ascertained from the writings without resorting to oral testimony.’”  Id.
(quoting Cohen v. McCutchin, 565
S.W.2d 230, 232 (Tex. 1978)).

          “The
law of contracts applies to Rule 11 settlement agreements.”  Ronin
v. Lerner, 7 S.W.3d 883, 886 (Tex. App.—Houston [1st Dist.] 1999, no pet.). 
“Parties form a binding contract when the following elements are present:
(1) an offer, (2) an acceptance in strict
compliance with the terms of the offer, (3) meeting of the minds, (4) each
party’s consent to the terms, and (5) execution and delivery of the contract
with the intent that it be mutual and binding.” 
Williams v. Unifund CCR Partners
Assignee Of Citibank, 264 S.W.3d 231, 236 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (emphasis
added). Because of the second element, “[w]here an offer prescribes the time
and manner of acceptance, those terms must ordinarily be complied with to
create a contract.”  Padilla, 907 S.W.2d at 460 (citing Town of Lindsay v. Cooke County Elec. Coop. Ass’n, 502 S.W.2d 117,
118 (Tex. 1973)).  

          The
Heberts’ June 5 offer letters prescribed the precise manner and time of
acceptance: “I offer to settle the claims I have . . . in exchange for payment
to me of . . . policy limits.  Payment must be made to me on or before 5:00
p.m., July 5, 2006.  In exchange for
payment of policy limits, I will execute a full and complete release . . . If payment is not made on or before that
date and time, this offer will expire and no further offer will be
forthcoming.”  (Emphasis added.)  This is like the initial settlement offer in Padilla, which the supreme court
indicated would have required acceptance by payment by the specified date and
time if the plaintiffs had not agreed to modify the acceptance terms by later
correspondence.  See Padilla, 907 S.W.2d at 460 (“Steidley’s initial letter to
Chandler offered to settle the case for the $40,000 policy limits, making clear
that the offer could only be accepted by payment of the money by a specific
deadline.”).[2]  The acceptance term of the Heberts’ offers
were clear and unambiguous: it required payment in a specified manner by a
specified time, or the offer would expire. 
Nothing in the remainder of the letter rendered this requirement
ambiguous.

          It is
undisputed that Bossley failed to pay the policy limits by the July 5
deadline.  What Bossley did before July 5
was to extend an offer to pay policy
limits to each plaintiff in exchange for a prior full and final release of all
claims.  This did not constitute an
acceptance because it did not strictly comply with the offer’s acceptance
method.  See Williams, 264 S.W.3d at 236 (providing that one element of
enforceable contract is that acceptance be in strict compliance with offer).  Although “a different method of acceptance
may be effectual where the ‘original offeror thereafter manifests his assent to
the other party,’” Padilla 907 S.W.2d
at 460 (quoting Town of Lindsay, 502
S.W.2d at 118), that did not happen here: it is undisputed that the Heberts did
not respond to Bossley’s June 14 letter.

          Conrad
nonetheless contends that he could accept the offers by offering to pay, rather
than by actual payment, for three reasons. 
First, he contends that the July 5 deadline “was [only] a funding
deadline, not an acceptance deadline.” 
Specifically, Conrad argues that the Heberts’ letters “did not restrict
the method of acceptance” to actual payment because they did not contain
qualifying language such as “in order for a contract to be formed, payment must
be made by [date]”; “in order to accept this demand, payment must be made by
[date]”; or “you may accept this offer only by making payment by [date].”  Such language was not required, however: the
Heberts’ intent to limit acceptance to payment by July 5 was clear because they
specified that if “payment” were not made to them before the referenced date
and time, “this offer will expire . .
. .”  (Emphasis added.)  This parallels the language in the initial
offer letter, quoted above, that the Padilla
court indicated required acceptance by payment by a date certain.  See
Padilla, 907 S.W.2d at 456, 460.  

          Second,
Conrad argues that “the letters invited acceptance either by payment or promise
to pay.”  Specifically, he contends that
offers “can be accepted either by performance or by promise of performance,
where the offeror does not explicitly limit the method of
acceptance.”  (Emphasis in
original.)  However, the offer letters do
explicitly limit the method of acceptance by requiring actual payment by the
specified deadline.  See id.

          Third,
Conrad argues that the Heberts “did not clearly indicate that time was of the
essence.”  The authority cited by Conrad in
support concerned whether time was of the essence in an already extant
contract, so that failure to meet a contractual deadline was a breach of that
contract or precluded its enforcement.  See Argos Res., Inc. v. May Petroleum, Inc.,
693 S.W.2d 663, 664, 665 (Tex. App.—Dallas 1985, writ ref’d n.r.e.); Laredo
Hides Co. v. H&H Meat Prods. Co., 513 S.W.2d 210, 218 (Tex. Civ. App.—Corpus
Christi 1974, writ ref’d n.r.e.) (op. on reh’g).  The case before us does not concern that issue,
but instead concerns whether Conrad accepted the offer in compliance with its terms.  See Williams,
264 S.W.3d at 236.  Those clear terms
allowed acceptance only by payment of policy limits by the date and time
specified.  

          We
distinguish the primary cases on which Conrad relies because, in them, (1) the
offeror agreed to a modification of the means of acceptance originally required[3] or (2) the issue was
whether a settlement agreement that did not specify a time for, or order of, performance
was unenforceable for those reasons.[4]

          We
hold that the trial court did not err in granting the Heberts’ summary-judgment
motions, and in denying Conrad’s summary-judgment motions, on the basis that no
contract was formed because Conrad failed to accept the offers in strict
compliance with their terms.  Having
concluded that one summary-judgment ground will support the judgment rendered,
we need not discuss the remaining bases for summary judgment. [5]  Accordingly, we overrule issues one and two.  

CONCLUSION

          We
affirm the judgment of the trial court.

 

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Bland and Sharp.

 











[1]
          The Texas Supreme Court
transferred this appeal from the Court of Appeals for the Ninth District of
Texas.  Misc. Docket No. 09-9049 (Tex.
2009); see Tex. Gov’t Code Ann. §
73.001 (Vernon 2005) (authorizing transfer of cases).





[2]
          That initial offer letter
provided: “[W]e make demand for policy limits of $40,000.00 for full and final
settlement of this case against the insured that you represent. Payment of this sum should be made on or
before Tuesday, April 23, 1991 at 5:00 p.m., by delivery of checks in the
appropriate amount to the offices of the undersigned made payable in the
following amounts and to the following payees: . . . . [N]o oral discussion
that we may have will serve to alter the time limits expressed in the
correspondence. I look forward to receipt of the checks on or before date
specified, failing which this offer to settle will be withdrawn and my clients
will proceed to perfect their rights under
Texas law . . . .”  Padilla v. LaFrance, 907 S.W.2d 454, 456 (Tex. 1995) (emphasis
in original).

 





[3]
          See Padilla, 907 S.W.2d at 460.

 





[4]
          See CherCo Props., Inc. v. Law, Snakard & Gambill, P.C., 985
S.W.2d 262, 266 (Tex. App.—Fort
Worth 1999, no pet.) (considering enforceability of signed contract that
specified who would pay certain amounts and who would sign releases, but not
specifying order or time of performance).

 





[5]
          Neither need we reach Conrad’s
issues three and four, which concern the propriety of the court’s having
sustained objections to certain of his summary-judgment evidence.  To the extent that the struck evidence
concerned anything other than the method of acceptance specified in the offers
(e.g., whether the June 14 letters
constituted counteroffers, why Bossley included what she did in the releases,
or why the Heberts did not respond to Bossley’s calls), it is irrelevant to our
holding.  To the extent that it concerned
Bossley’s subjective beliefs about whether she was accepting the offers by
doing something other than tendering payment, the evidence is irrelevant to our
holding, which was based on the offers’ plain language.  See Owens v. Upper Neches River Mun. Water
Auth., 514 S.W.2d 58, 62 (Tex. Civ. App.—Tyler 1974, writ ref’d
n.r.e.) (holding that no fact issue was raised by plaintiffs’ understanding
that they had accepted an offer that gave them unconditional right to
repurchase because the conditional nature of the offer was unambiguous on its
face, rendering the purported “acceptance” invalid).