## LEO A. KETTERER v. INDEPENDENT SCHOOL DISTRICT NO. 1, CHIPPEWA COUNTY, AND OTHERS.

79 N. W. (2d) 428.

November 16, 1956—No. 36,877.

214

*Holmquist & Holmquist* and *Callaghan & Groven,* for appellant.
*John C. Haave* and *Saltness & Cudd,* for respondents.

NELSON, JUSTICE.

Plaintiff as taxpayer brings action for a declaratory judgment declaring void a deed of conveyance of real property from defendant Independent School District No. 1 of Chippewa County to defendant Henry A. Roust on the grounds that said conveyance made by a municipal corporation was without consideration and that said conveyance was executed by officers of said school district without

authority from the school board and from the voters of the school district. Plaintiff's complaint, after setting forth the making and delivery of the deed in question, alleges that the:

"* * * deed was made and executed by said R. C. Ekberg, Chairman, and E. G. Larson, Clerk, without authority being first given them to so do by the School Board or voters of defendant Independent School District No. 1 of Chippewa County.

"That defendant Henry A. Roust paid no consideration to defendant Independent School District No. 1 of Chippewa County for said conveyance.

"That at the time of said conveyance the land conveyed by said deed was a part of lands owned and used by said defendant Independent School District No. 1 for recreational and school purposes and was a 'school site' as the term is so used in Minnesota Statutes, Section 126.06, Subdiv. 2."

It was further alleged that defendant Union State Bank is the mortgagee on an unsatisfied mortgage on the land conveyed by said deed and other lands.

The trial court entered its findings of fact and by its conclusions of law ordered dismissal of plaintiff's action, awarding defendants their costs and disbursements and providing that judgment be entered accordingly. See, Rules of Civil Procedure, Rules 41.02 and 52.01. Upon motion for amended findings or a new trial, the court below entered its order of denial and attached its memorandum to the order. Its order of dismissal was a part of its conclusions of law.

No issue of fraud or misrepresentation was pleaded. Neither was that issue raised or litigated at the trial. Therefore, we are concerned only with the question of whether the deed was supported by a valid consideration and whether the authority upon which the school board acted in directing the execution and delivery of its warranty deed to the defendant Henry A. Roust and its later ratification of that transaction by resolution passed and adopted on December 14, 1954, was sufficient, valid, and existing.

For purposes of brevity, we will hereinafter refer to Leo A. Ketterer, taxpayer, as plaintiff and to defendants as school board or district, Roust, and Union State Bank.

Plaintiff is a resident taxpayer and freeholder of the school district as is defendant Roust. The school district and the Union State Bank named as defendants in the action are also respondents herein. Plaintiff, having brought this action as taxpayer, is subject to the same rights and limitations that would apply to the school district if it had instituted this action as plaintiff.

In the year 1925 the school district became the owner of certain real estate known as "Windom College" site, a piece of property which the school district continued to own during the times herein mentioned. The site is bordered on the south by Miawakon Avenue. Adjoining Miawakon Avenue on the south is a tract of land described as Lots 1 and 2 in Nelson's Second subdivision in the city of Montevideo owned by Roust and acquired by him in the year 1936. A former home occupied by Roust was located on a part of said Lot 2. Said Lot 1 lies adjacent to Miawakon Avenue.

From 1938 and until Roust joined in a petition to the city council to vacate that part of Miawakon Avenue adjacent to said Lot 1, he thought it had been previously vacated and that he owned the south 30 feet of the avenue opposite his lot.

Miawakon Avenue, a public avenue 60 feet wide, is intersected by First Street North at a point on the south side of the site. Roust's property is situated at the southwest corner of the intersection and runs west on Miawakon Avenue, a distance of 236 feet. That part of Miawakon Avenue situated between the school site and Roust's property had never been opened for public traffic.

On September 15, 1952, the city council of Montevideo vacated that part of Miawakon Avenue lying between the site and Roust's property, the defendant Roust, apparently at its request, joining with the school district in the petition to vacate. Consequently the south 30 feet of that part of Miawakon Avenue adjacent to Roust's property reverted to him. The north 30 feet of the vacated avenue reverted to the school district. The subject matter of this case is the strip of property 30 feet wide and 236 feet long that reverted

to the school district as a result of the vacation of that part of Miawakon Avenue.

The evidence in the record, viewed in the light most favorable to the defendants, who prevailed below, discloses the following facts: The defendant Roust wrote a letter, April 9, 1951, to the school board asking permission to buy the north one-half of the vacated portion of Miawakon Avenue adjacent to his lots for the purpose of beautifying it, and he asked the board to appraise it. He was later called in to a school board meeting of the district held April 20, 1951. The offer was discussed at the time but no terms decided upon. Roust's letter of April 9, 1951, was concluded by him as follows:

"No part of this strip is on level land. It is part of a ravine and the creek bed lies in it for approximately one hundred feet at the east end. It is obviously unsuited for residential, industrial, or public building purposes, and its separation from the Windom property could in no way detract from present use or future sale value of that tract. More probably our proposed purchase would enhance the value of the school property, as we want it for the purpose of beautifying it, much as we have done with our lots adjacent to the strip in question.

"Should you see fit to consider this sale, would you kindly appraise its value and inform me of your decision."

Shortly thereafter the superintendent of the school district issued a printed notice addressed to the board of education advising the members of their regular meeting set for April 20, 1951, at 7:30 p. m. in the central office. This notice contained a statement of the items of business to be considered, among which was item No. 3, which read as follows:

"3. Request of Dr. Roust to purchase a strip of land in the Windom property adjacent to his lots. Dr. Roust will be present at our meeting."

Later the school board arranged a meeting with the local county commissioners, who were apparently interested in acquiring the

property, and Roust was called over to the meeting and questioned about the 30 feet adjacent to his lots which he had improved. He had no further direct negotiations, turning the matter over to his attorney on whose advice he later acted in joining in the petition to vacate. Shortly after that, on October 24, 1952, the deed in question here was executed by the chairman and clerk of the school district and delivered to Roust. It was duly recorded November 3, 1952. The deed recited a consideration of "One Dollar *and other valuable consideration.*" (Italics supplied.) Roust did not know whether the school board had appraised the land, or in what amount, if any. He took the recitation in the deed to mean that it was appraised at $1 and that the board had decided that the land was of no value to the school district. He did not personally pay the monetary consideration of $1, thinking his attorney had paid it. He did not know that it had not been paid until somebody apprised him of that fact after having gone through the school records. Thereafter he tendered payment of the monetary part of the consideration at a pretrial conference.

Roust did not suggest any price to the school board; the matter of appraisal had been left up to it. He considered the tract to have a negative value and that acquiring it would be a detriment to him. He stated that he would have been willing to pay a dollar or two, perhaps $10, but would not have paid $500 and probably not $100. Following the delivery and recording of the deed, he erected a modern house on Lot 1 and the south 30 feet of the avenue. In addition to the cost of building the new home, he spent $1,900 on the north 30 feet in erecting a retaining wall across a gully on that strip, including fill and culvert. He expected later to expend another $200 for a rock crown on the adjoining wall. Roust considered that the improvements so made by him furnished lateral support to the adjacent lands of the school district, increased their value, and satisfied his obligation to meet the demands of the deed for monetary as well as the valuable consideration. Roust considered that the improvements so made by him had met all requirements from his side of the bargain and had furnished lateral support to the

adjacent lands of the school district, as agreed, increasing their value and relieving the school district from the burden of any expense therein. He further considered that the transfer of the title of this strip of land to him mutually benefited him, the school district, the taxpayers, and the community in general by placing the vacated strips of land on the tax rolls and that therefore the transaction in no wise involved a gift of the property from the school district to him or a transfer of this land to him without the school district receiving $1 and other valuable consideration in return for the deed.

It stands admitted in the record that a return of the property to the school district might well work a hardship on Roust that would outweigh the benefit inuring to the school district. Plaintiff in view of that probability suggested before the court that it consider entering a money judgment against Roust for the reasonable value of the premises at the time of the transfer, should plaintiff prove himself entitled to prevail in the action. This being a suit asking for a declaratory judgment, the court refused to entertain the proposition advanced by plaintiff unless defendants would agree to it. Defendants refused to so agree on the ground that a taxpayer cannot maintain an action for a money judgment on the pleadings presented, nor under the form of action pursued; that the taxpayer as plaintiff cannot usurp the discretionary power of the district school board to determine what the consideration or the value of this property was at the time it was conveyed unless plaintiff alleges and proves that the school board acted fraudulently and in bad faith consummated the transaction involved.

Roust was never called upon by the school district to pay the $1 included as a part of the consideration for the deed nor was the recovery of it involved in this action. It appears that Roust assumed all expenses of drawing and recording the deed, and the record indicates that later, on December 14, 1954, the school district adopted a resolution stating that the conveyance to Roust was thereby confirmed, ratified, and approved.

■ A stipulation of facts, prepared by plaintiff's counsel and agreed to by all parties to the action, was submitted as true and

established facts and made a part of the record and is therefore binding on all the parties. It stipulated that in the year 1946 a special election of the voters authorized the school district to sell a tract of land that includes the land in question here; that as a result of the street-vacation order entered September 15, 1952, the south 30 feet of that part of Miawakon Avenue adjacent to Roust's property reverted to Roust and the balance reverted to the school district; that on October 24, 1952, the school district did execute a deed conveying the disputed property to Roust. It further stipulated that there is no record of any resolution in the minutes of the school board authorizing the execution of the deed to Roust; that Roust paid no monetary consideration for the conveyance (having reference to the $1 consideration recited therein); that Roust assumed all expenses of drawing and recording the deed; and that on December 14, 1954, the school board adopted a resolution stating that the conveyance to Roust was confirmed, ratified, and approved.

There was printed as a part of the settled case pursuant to stipulation certain requests for admissions submitted by defendants and answered by plaintiff. By the answers it stands admitted that the resolution ratifying the conveyance to Roust was passed by the school board December 14, 1954; that Roust expended large sums in filling, grading, draining, and landscaping the north one-half of Miawakon Avenue which had been vacated; that the said improvements furnished lateral support to the adjacent lands still held by the school district; that said improvements increased the value of the land still held by the school district; and that the conveyance to Roust resulted in removing the conveyed lands from a tax-exempt classification thereby resulting in tax contributions to the school district.

Plaintiff called Roust for cross-examination as an adverse witness under Rule 43.02 of Rules of Civil Procedure. He also called as his witness a former school board member, Roger Anderson, who said he had no recollection of any discussion about the deed to Roust. He was not on the board when the conveyance was later ratified by a resolution entered upon the minutes. No other school board

members or officers were called. No other witness was presented by the plaintiff with the exception of one Harry A. Lien, who was engaged in the business of selling real estate in the city of Montevideo. He was called by the plaintiff for the purpose of testifying as to the market value of the property described in the deed as of October 24, 1952. When asked the question "Would it actually have any value sold separately as a tract to someone who did not own the adjoining property," his response was "That I can't answer."

There was offered and received a deposition of the plaintiff taken April 18, 1955, at which time there were appearances in behalf of plaintiff, the school district, Roust, and the Union State Bank. The plaintiff testified therein that he had no knowledge of real estate values of properties situated in the area of the Roust properties and the school site.

■ Where a city or other local betterment agency enters contracts of a business nature rather than of a governmental nature, the common principles of law applicable to individuals and private persons determine the result. Reed v. City of Anoka, 85 Minn. 294, 88 N. W. 981. In First Nat. Bank v. Village of Goodhue, 120 Minn. 362, 139 N. W. 599, 43 L.R.A. (N.S.) 84, the action involved the recovery of money loaned to a village. The village set up the defense that the loan was unauthorized and consequently void. This court concluded that there were no reasons for differentiating between private and municipal corporations as regards the rules of justice and common honesty; that a public corporation cannot deny its obligations on contracts except where there is a question of fraud, collusion, or an act performed between the village officers and a third person that is designed to intentionally invade or violate the law. Consequently, it was incumbent upon the plaintiff, on the facts of the instant case, to establish fraud, bad faith, or collusion, or complete lack of authority in order to set aside this conveyance. In Webb v. School Dist. No. 3, 83 Minn. 111, 112, 85 N. W. 932, this court held that "There is a presumption of general application to the effect that public officials perform their duty; that their acts are legal; and, when special authority is necessary to do a particular act, that the

act was duly authorized, and within the line of the officials' duty."

It is likewise presumed that the officers of a school district perform their duties; that their acts are legal; and, when special authority is necessary to do a particular act, that the act was duly authorized and within the line of the officers' duty. The meetings of a school board are presumed to have been regularly called and the proceedings valid in the absence of evidence to the contrary. 17 Dunnell, Dig. (3 ed.) § 8671, and cases cited. The trial court, as the trier of the facts, concluded that the plaintiff in this case did not produce evidence which overcame that presumption.

As to ratification, the courts have generally distinguished between ratification of a contract that is ultra vires in a primary sense and the ratification of contracts that are ultra vires in the secondary sense. Acts ultra vires in the primary sense are those acts that lie outside the scope of the authority of the governing body. These acts cannot be effectively ratified since there is no authority to perform the acts in the first instance. Acts ultra vires in the secondary sense are acts within the authority of the governmental body which were not performed in compliance with certain statutory or regulatory requirements. In those cases where the governmental body or subdivision does have authority to perform the act in question, a subsequent ratification is effective. Bell v. Kirkland, 102 Minn. 213, 113 N. W. 271, 13 L.R.A.(N.S.) 793. The school district executed and delivered its deed to Roust October 24, 1952, and ratified the act by a resolution entered in the minutes of the board, more than two years later, on December 14, 1954.

■ We now come to the question of consideration.

"A valuable consideration, in the sense of the law, may consist either of some right, interest, profit, or benefit accruing to the one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other." 44 Wd. & Phr. (Perm ed.) p. 25.

A valuable consideration to support a contract need not be one translatable into dollars and cents; it is sufficient if it consists of the performance, or promise thereof, which the promisor treats and

considers of value to him. 44 Wd. & Phr. (Perm. ed.) p. 17, citing In re Estate of Griswold, 113 Neb. 256, 202 N. W. 609, 38 A. L. R. 858.

A "valuable consideration" may consist in some right, interest, or benefit to one party, or some loss, detriment, or responsibility resulting actually or potentially to the other, and if there is any advantage to one of the parties the law will not weigh the adequacy of consideration. 44 Wd. & Phr. (Perm. ed.) p. 18.

"A valuable consideration [for a conveyance of land] may be other than the actual payment of money, and may consist of acts to be done after the conveyance." Stanley v. Schwalby, 162 U. S. 255, 276, 16 S. Ct. 754, 763, 40 L. ed. 960, 967.

■ The trial court found that, after receiving the deed, Roust constructed a retaining wall from one side of the gully to the other and filled in dirt between said retaining wall and the approximate westerly line of First Street and made other changes and improvements in the gully on the strip conveyed by the deed, expending approximately $1,900. The court also found that said work has substantially improved the appearance of the immediate area and is of substantial value and benefit to the remainder of the "Windom College" site owned by said school district.

Since the court so found upon competent testimony, we need not here concern ourselves directly with the question of whether the school district may or may not convey its realty for a nominal consideration of $1 only, other than to say that it is the law generally, and it should be, that a school district may not convey its realty to a private party for a mere nominal consideration. An exception thereto is provided by M. S. A. 465.035 as between governmental subdivisions or other public corporations. Roust, having improved the strip of land he acquired to his own detriment, incurring all the expense connected with it, cannot be charged with failure of consideration even though his attorney had not paid to the school district the monetary consideration of $1, also recited in the deed. Roust had no knowledge that the $1 was not paid; the school district never demanded it; and later it was tendered in open court at a pretrial conference. The evidence indicates that

Roust had met whatever commitments were made to improve and beautify it at his own expense.

In Stone-Ordean-Wells Co. v. Helmer, 142 Minn. 263, 171 N. W. 924, we had an action by a creditor to recover on a letter of credit issued by defendants on behalf of one McDonald. The letter recited a consideration of $1. Defendants argued a lack of consideration because the dollar was not paid. This court held that, where defendants issued the letter of credit to secure additional credit for McDonald, there was sufficient consideration even though the dollar was not paid.

Plaintiff complains of certain legal omissions in connection with the execution and delivery of the deed, namely, that the board of education in the minutes did not adopt a resolution authorizing the officers to complete the transaction in question before the delivery of the deed; that the minutes of the meeting of the board do not show that any action was taken by the board to authorize the sale to Roust; and that consequently no minutes of the transaction were published as required by statute. No particular method of action is prescribed by the statute. The board may act by resolution. Minutes should have been kept by the board. By requiring publication of proceedings, it must be assumed that the statute implies that minutes shall be kept of the board's proceedings. M. S. A. 125.08, however, does not invalidate any action taken merely because of failure to publish. Where municipal authorities, such as the school district, are authorized to contract in relation to a particular matter, they have a discretion as to methods and terms, with the honest and reasonable exercise of which a court cannot interfere even though they may not have chosen the best method or made the most advantageous contract. 13 Dunnell, Dig. (3 ed.) § 6697.

Ordinarily, where a transaction such as the one under consideration in the instant case is made pursuant to authority admittedly granted by the voters, and the public officers are authorized to act and to determine upon the consideration to be required for the transfer, the transaction being open and free from fraud, collusion, or bad faith, it presents no question for the courts. The executive

and legislative departments of government have, properly, an extensive field of action, wherein, if they err, there results no justiciable question for court determination. It is often a political issue, and if such it is, it is not for the courts to settle it. An error in that field ought to be corrected by an appeal to the voters at the proper time. Davies v. Village of Madelia, 205 Minn. 526, 287 N. W. 1; Hendricks v. City of Minneapolis, 207 Minn. 151, 290 N. W. 428.

 M. S. A. 125.06, subd. 2, provides that, when a school board has been authorized by the voters at a regular meeting or election or at a special meeting or election called for that purpose, it may "sell or exchange school houses or sites and execute deeds of conveyance thereof." Section 125.08, subd. 6, does not specify in detail just what is to be published in the matter of the official proceedings of the board and therefore the matter must necessarily lie within the sound discretion of the school board, providing the publication is sufficiently full to fairly set forth the proceedings. Neither does the provision state that any failure to meet a full compliance in the matter of publishing every detail in the proceedings will in any manner invalidate a transaction of the board wherein it has the authority and the power to act.

While the plaintiff has admitted in the record that the voters of the school district authorized the school board to sell a part of the "Windom College" site in the year 1946, he questions the authority as a continuing one until the conveyance in 1952 was made to Roust. Section 120.17 provides that where any difference of opinion arises between school officers as to their powers or duties, etc., the question may be submitted through proper channels to the attorney general's office for a written opinion thereon, and such opinions shall be binding until annulled or overruled by a court. Opinion Attorney General, No. 622-i-7, July 27, 1945, was to the effect that authority for sale of school property, granted by vote of the people, continues until revoked or conditions have changed, and lapse of time alone does not revoke authority. This question does not appear to have come before the courts of this state and under the circumstances the school officers would be justified in looking to the opinion

of the attorney general in that regard for its then authority. The attorney general has also rendered his opinion that, while § 125.06, subd. 2, requires authority of the electors before conveyance of school property can be made, nevertheless, ratification is of equal effect. See, Opinion Attorney General, No. 622-i-8, April 26, 1945. Also see, 17 Dunnell, Dig. (3 ed.) § 8672.

■ Defendants question plaintiff's right to maintain a taxpayer's action to challenge the validity of public contracts or acts done pursuant to powers given and authority to act, because of irregularities or failure to comply strictly with technical directions of a statute or legally authorized regulations. Furthermore, he claims that the right of taxable inhabitants of a municipality to maintain an action in their own names to test the validity of a municipal contract should be restricted to applications for preventive relief, and does not extend to an application for remedial relief after the commission of an illegal act affecting the entire community and not specifically the individual bringing the bill. They argue that, to qualify his right to proceed, a taxpayer must show loss to taxpayers as a whole while the record in this case shows substantial benefits to the taxpayers both by the improvements made by Roust, mutually benefiting him and the school district, and the further fact that the strip of land involved is now upon the tax rolls of the community. We are inclined to the belief that plaintiff has the right here in the first instance to proceed in the role of a taxpayer. Defendants' argument may well present an effective and suitable defense. It was similarly indicated in Reed v. Village of Hibbing, 150 Minn. 130, 184 N. W. 842, which was an injunction case wherein plaintiff sought to obtain preventive relief rather than to have a transaction entered into by public officers declared null and void due to lack of authority and illegality of the deed or contract entered into.

The main characteristic of the declaratory judgment which distinguishes it from other judgments is that, by the act authorizing it, courts are empowered to adjudicate upon disputed legal rights whether or not further relief is or could be claimed. The judgment

stops with the adjudication of the rights in issue and is not remanded to a sheriff for execution. The Declaratory Judgments Act has enabled the courts to expand their usefulness in the determination of disputes. The customary conditions of adjudication, however, have not been altered thereby. These judgments declare the existence of rights in doubt or uncertainty, rather than create new rights, *and claims of validity by the one challenged are as justiciable as claims of invalidity by the challenger*. It does not alter the general court procedure applicable to a civil action for the action for a declaration follows the procedure in civil cases generally and the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate.[1]

Rule 57, Rules of Civil Procedure, provides that the procedure for obtaining a declaratory judgment pursuant to M. S. A. c. 555 shall be in accordance with these rules, and the right to trial by jury is retained under the circumstances and in the manner provided in Rules 38 and 39. Plaintiff argues that the court abused its discretion in dismissing the action instead of making a declaration in his favor or any declaration at all. Defendants say that a dismissal of the action on the merits was justified on the ground that the plaintiff was not entitled to attack the validity of a completed contract, after its performance, because under those circumstances he lacked a special interest in the controversy; that he therefore has no special interest in the issues involved above the general community or different from the entire community; and also on the further ground that the plaintiff has utterly failed to sustain the burden of proof upon any of the respective charges set forth in his complaint.

■ Our rules of procedure governing dismissal of actions are Rules 41.01 and 41.02. Rule 41.02 provides that:

"* * * After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown

---

[1]See, 18 Minn. L. Rev. 239 to 268.

no right to relief. In an action tried by the court without a jury the court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52.01. *Unless the court in its order for dismissal otherwise specifies, a dismissal under this rule and any dismissal not provided for in this rule or in Rule 41.01, other than a dismissal for lack of jurisdiction, operates as an adjudication upon the merits."* (Italics supplied.)

The trial court herein made and entered its findings and conclusions of law that upheld the actions of the school district and the resulting conveyance and ratification thereof. He found that the voters of the school district had authorized the school board to sell the strip of land involved; that the board acting under its general powers and upon that authority determined upon the consideration to be performed and executed and delivered the deed after accepting Roust's offer of purchase; and that this was not an action to recover the money consideration expressed in the deed but an action for a declaratory judgment that the deed be pronounced null and void. Absent the charge of fraud, the court based its findings of fact and conclusions of law on the basis that inadequacies of consideration without fraud or bad faith are no ground for relieving a party from the consequences of a contract knowingly entered into. The court in its memorandum said:

"It seems to the Court that we cannot go into the question of adequacy of consideration in the determination of this matter, otherwise that point could be raised against any board which is given authority to make a sale of property, absent fraud. It is elementary that there is a presumption that the officers acted within the limits of authority granted by the board. *This presumption has not been overcome by any evidence."* (Italics supplied.)

The judgment dismissed the plaintiff's complaint. Plaintiff argues that the judgment is defective in that it did not declare the rights of the parties. The judgment in better form should have declared

the rights of the parties in conformity with findings and conclusions of law. The declarations may be either affirmative or negative in form and effect. M. S. A. 555.01. However, since the court's findings of fact, conclusions of law, and order for judgment resulting in a dismissal herein operates as an adjudication upon the merits, the failure to declare the rights of the parties on the state of the record in this case is, we think, here without prejudice and not reversible error. See, State, by Burnquist, v. Bollenbach, 241 Minn. 103, 63 N. W. (2d) 278; Wright, Minnesota Rules, pp. 294, 295. Since the trial court's findings and order clearly defines the rights of the parties, we therefore do not find it necessary upon the particular facts of this case to order a modification of the judgment as entered.[2]

Plaintiff presents its assignments of error in ten separate paragraphs. The findings, conclusions of law, and order for judgment attacked are amply sustained in the evidence. Substantially the main question for determination is raised by assignment No. 10 which in substance presents the question whether the facts found by the trial court afford a legal basis for any relief other than dismissal. This being disposed of there is no further necessity of a separate treatment and disposition of the other assignments other than this opinion includes.

This action having been tried by the court without a jury, the court as the trier of the facts must be sustained in its findings unless they are palpably and manifestly contrary to the evidence. 1 Dunnell, Dig. (3 ed.) § 411. The plaintiff has failed to sustain the required burden of proof and the order of the court is accordingly affirmed.

Affirmed.

[2]See, Rules of Civil Procedure, Rules 41.02 and 57; Northwestern Nat. Ins. Co. v. Freedy, 201 Wis. 51, 227 N. W. 952; Denning v. City of Green Bay, 271 Wis. 230, 72 N. W. (2d) 730.