**William J. HEMPEL, et al., Appellants,**

v.

**CREEK HOUSE TRUST, et al., Respondents,**

**Judith Anna Ingemann f/k/a Judith Anna Seymour, Respondent,**

and

**all other persons unknown claiming any right, title, estate, interest, or lien in the real property described in the complaint here, Defendants.**

No. A06–2473.

Court of Appeals of Minnesota.

Dec. 31, 2007.

Roger J. Magnuson, David Y. Trevor, Dorsey & Whitney LLP, Minneapolis, MN, for appellants.

Lisa M. Agrimonti, Jesse R. Orman, Margaret Savage, Briggs and Morgan, Minneapolis, MN, for respondents Creek House Trust, et al.

Glenn A. Bergman, Jared M. Goerlitz, Peterson Fram & Bergman, P.A., St. Paul, MN, for respondent Judith Anna Ingemann.

Considered and decided by RANDALL, Presiding Judge; KALITOWSKI, Judge; and HUDSON, Judge.

## OPINION

KALITOWSKI, Judge.

Appellants William J. and Kay L. Hempel challenge the district court's grant of summary judgment to respondents Creek House Trust and Judith Anna Ingemann on appellants' claim for "specific perform-

ance/breach of contract/damages" and their request for a declaratory judgment, arguing that (1) the district court incorrectly determined that their claim of breach of a right-of-first-refusal agreement was barred by the six-year limitations period in Minn.Stat. § 541.05, subd. 1 (1992); and (2) they were entitled to a declaratory judgment clarifying the current status of the agreement. Appellants also argue that the district court erred in denying their motion to amend their complaint to add an additional defendant.

## FACTS

This case involves two adjacent parcels of land: (1) the parcel owned by appellants, the Hempel property; and (2) the parcel owned by respondents, the Creek House property, or subject property. Prior to 1981 both properties were owned by respondent Judith Anna Ingemann (f/k/a Judith Anna Seymour). On February 3, 1981, Ingemann sold the Hempel property to William and Nancy Harris. As part of the sale, Ingemann gave the Harrises a right of first refusal on the subject property:

> If [Ingemann] receives a bona fide written offer for the purchase of the Subject property or any portion thereof, [Ingemann] shall not accept such offer without first offering to sell the same to Harris on the same terms and conditions set forth in said offer less any real estate broker's commission which [Ingemann] would be obligated to pay if [Ingemann] accepted said offer. Written notice of said offer shall be given by [Ingemann] to Harris and Harris shall have 2 weeks thereafter to exercise the said right of first refusal by giving written notice thereof to [Ingemann]. If Harris does not so exercise said right of first refusal, [Ingemann] shall be free to accept said offer. If [Ingemann] does not accept said offer, Harris shall again have the same right of first refusal with respect to any subsequent offer for the purchase of the Subject Property or any portion thereof.

The parties further agreed that "[t]he right of first refusal hereby granted to Harris shall be binding upon [Ingemann] and [Ingemann's] heirs and assigns and shall inure to the benefit of Harris and Harris' heirs and assigns." The right-of-first-refusal agreement was recorded in Chisago County February 6, 1981.

The Hempel property was conveyed from the Harrises to James and Mary Lande in 1982 and the Harrises specifically assigned their right of first refusal to the Landes. In 1985 the Landes conveyed the Hempel property to appellants with a specific assignment of the right of first refusal. All conveyances of the Hempel property were recorded in Chisago County.

On July 17, 1992, respondent Ingemann conveyed the subject property to William and Jean West by a warranty deed that did not mention the right of first refusal. There is a factual dispute as to whether the Wests knew of the right-of-first-refusal agreement at the time of the conveyance. On the same date, Ingemann executed a document that stated: "Right of First Refusal has lapsed. Said William R. Harris is now deceased and said Nancy R. Harris no longer resides at neighboring property and to the best of my ability can not [sic] locate her." Ingemann admits that notice was not furnished to Nancy R. Harris or appellants. The warranty deed conveying the subject property to the Wests and the "lapse statement" were recorded in Chisago County on July 22, 1992. Jean West conveyed the subject property to the Creek House Trust October 20, 2004. The Creek House trustees claim that they made no offer to purchase the subject

property and that their mother, Jean West, conveyed it to them as a gift.

Appellants discovered in January 2004 that Ingemann had transferred the subject property. On October 31, 2005, appellants filed a complaint against Ingemann, the Creek House Trust, and any unknown persons claiming a right to the subject property. Appellants included a request for a declaratory judgment under Minn.Stat. § 555.01 (2004), and a claim for "specific performance/breach of contract/damages."

Respondent Creek House Trust moved for summary judgment. The trust argued that appellants' claim for specific performance/breach of contract/damages was barred by the six-year statute of limitations for contract claims because appellants were "seeking damages and specific performance based on a contract that was breached, if at all, more than 13 years ago." Respondent trust further argued that the request for a declaratory judgment should not be granted because appellants did not meet the statutory prerequisites for relief under Minn.Stat. § 555.01.

The district court granted the trust's motion on May 12, 2006, holding that there were no genuine issues as to any material facts and that the claim for specific performance/breach of contract/damages failed as a matter of law as time-barred because "in July of 1992 the [appellants] could have initiated a breach of contract action against Ingemann and that action would have survived a motion to dismiss." The court also denied the request for a declaratory judgment stating that "this claim cannot stand on its own."

More than five months after respondents filed the summary judgment motion, and only three days before it was granted, appellants filed a motion to amend their complaint to add Jean West as a defendant. Appellants alleged that West's 2004 transfer of the subject property to the Creek House Trust was an additional breach of the obligations contained in the right of first refusal. Respondent trust argued that the motion should be denied as it lacked merit, was untimely, and would cause it prejudice.

The district court denied appellants' motion to amend on June 6, 2006, stating that "[a]lthough the Court finds there would be little prejudice to [respondents] ... because there was undue delay by [appellants] and because it would be futile ..., it is appropriate to deny [appellants'] motion."

On July 24, 2006, Ingemann, the only remaining defendant, moved to dismiss appellants' claims against her with prejudice. The district court incorporated its summary judgment findings and granted her motion on September 26, 2006. This appeal follows from that judgment.

## ISSUES

1. When does the statute of limitations for a claimed breach of a right-of-first-refusal agreement begin to run?

2. Should Minnesota adopt the "discovery rule" to toll the running of the statute of limitations for a claimed breach of a right-of-first-refusal agreement until the right-holder has notice of the breach?

3. Should the statute of limitations have been tolled as a result of respondents' alleged fraudulent concealment?

4. Is appellants' claim timely because the appropriate statute of limitations for a right-of-first-refusal claim is 40 years as provided in the Marketable Title Act?

5. Did the district court abuse its discretion by denying appellants' motion to amend their complaint?

6. Did the district court err in refusing to hear appellants' request for a declarato-

ry judgment regarding the current status of their right of first refusal?

## ANALYSIS

The standard of review applicable to a grant of summary judgment is whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *Wallin v. Letourneau,* 534 N.W.2d 712, 715 (Minn. 1995). If no material facts are at issue on appeal, the reviewing court need only determine "whether the district court erred in applying the law to determine the accrual of the cause of action and the running of the statute of limitations." *Peterson v. Johnson,* 720 N.W.2d 833, 837 (Minn.App. 2006) (quotation omitted). A challenge to the district court's application of a statute of limitations is a question of law to be reviewed de novo. *Benigni v. County of St. Louis,* 585 N.W.2d 51, 54 (Minn.1998).

## I.

Appellants contend that the district court erred in finding that their claims based on the 1992 conveyance were barred by the six-year statute of limitations period of Minn.Stat. § 541.05, subd. 1 (1992). Appellants argue that their claim for breach of a right of first refusal did not accrue until they received notice that the right was activated by a third party's bona fide written offer to purchase the subject property. We disagree.

Appellants maintain that the right of first refusal is dormant until notice of an offer to purchase is given. Thus, on the facts here, they claim they had no basis to bring a lawsuit because the statute never started to run absent their notice of the 1992 sale. Appellants are correct that the

right of first refusal is activated when the right-holder receives notice of an offer to purchase the subject property. *See, e.g., Dyrdal v. Golden Nuggets, Inc.,* 689 N.W.2d 779, 784 (Minn.2004) (holding that a right of first refusal "ripens into an option when the owner receives a bona fide third party offer and notifies the holder of the right"); *Park–Lake Car Wash, Inc. v. Springer,* 352 N.W.2d 409, 411 (Minn.1984) (distinguishing a right-first-refusal agreement from an option contract because the former requires a condition precedent: "the owner must have received a bona fide offer from a third party which he or she is willing to accept"). But the right of first refusal is breached when the required notice is not given because that is when appellants' claim would survive a motion to dismiss.[1]

In support of their argument that their claim did not accrue, appellants rely on an Indiana case that states that holders of a right of first refusal are "not entitle[d] ... to take any action until they receive[ ] notice of the offer." *McGehee v. Elliott,* 849 N.E.2d 1180, 1189 (Ind.Ct.App.2006). But the *McGehee* court did not hold that plaintiffs are precluded from bringing a claim until they have notice. Rather, the court held that right-holders are precluded from exercising their right until they have notice because, until they have notice of the proposed sale, they do not yet have the option to purchase the subject property. When notice is given to its holder, the right of first refusal is "transmuted into an option," but the lack of notice completes the breach of the right-of-first-refusal agreement and creates a cause of action. *Id.* at 1188–89 (quotation and citation omitted). The *McGehee* court stated, "the only

---

1. We note that although it is undisputed that all documents relevant to the breach of the right-of-first-refusal agreement were properly filed, the issue of whether this constituted

constructive notice for appellants was neither presented to nor addressed by the district court and we do not address it here.

time limitation at that point [is] the statute of limitations on a breach of contract action," rejecting the argument that a claim for a breach of a right-of-first-refusal agreement must be brought within the time limitations the agreement provided for exercising *the option* to purchase. *Id.* at 1189 (citation omitted).

Appellants cite other cases from foreign jurisdictions, but those focus on the triggering and exercising of a right of first refusal and do not discuss whether the limitations period only begins to run after notice is given. *See Pincus v. Pabst Brewing Co.,* 893 F.2d 1544, 1550–53 (7th Cir. 1990) (determining what constitutes proper notice); *John D. Stump & Assoc., Inc. v. Cunningham Mem. Park, Inc.,* 187 W.Va. 438, 419 S.E.2d 699, 704–06 (1992) (determining what constitutes proper notice); *New Haven Trap Rock Co. v. Tata,* 149 Conn. 181, 177 A.2d 798, 800 (1962) (holding notice triggers the option); *Webb v. Reames,* 326 S.C. 444, 485 S.E.2d 384, 385–86 (Ct.App.1997) (declaring a perpetual right of first refusal with a fixed purchase price was void for violating the rule against perpetuities). None of the cases cited by appellant held that the running of the statutory period was tolled until notice was given.

■ Statutes of limitations serve dual purposes: "the repose of the defendant and the fair and effective administration of justice." *Dalton v. Dow Chemical Co.,* 280 Minn. 147, 153 n. 2, 158 N.W.2d 580, 584 n. 2 (1968). Minnesota courts interpreting Minn.Stat. § 541.05 have held that the statute begins to run when the cause of action accrues, meaning when a plaintiff's claim would survive a defendant's motion to dismiss for failure to state a claim upon which relief can be granted (the "damage" rule). *See Antone v. Mirviss,* 720 N.W.2d 331, 335 (Minn.2006) (applying the rule to a claim for legal malpractice); *Juster Steel*

*v. Carlson Cos.,* 366 N.W.2d 616, 618 (Minn.App.1985) (holding that a breach of contract claim must be brought within six years of the action causing the breach).

■ We reject appellant's argument that the damage rule is inappropriate for a claim alleging a breach of a right-of-first-refusal agreement. A right-of-first-refusal agreement is a contract and the party with the right is damaged when it is breached. Here the district court correctly granted respondent's motion for summary judgment because "in July of 1992 the [appellants] could have initiated a breach of contract action against Ingemann and that action would have survived a motion to dismiss." Thus the six-year limitations period applicable to contract actions expired in July of 1998 and appellants' subsequent attempt to bring forth a claim was time-barred. Minn.Stat. § 541.05, subd. 1.

## II.

■ Appellants also contend that the district court erred in concluding that their claims based on the 1992 conveyance were barred by the six-year statute of limitations, arguing that this court should apply the "discovery rule," recognized in other jurisdictions, to toll the limitations period until the right-holder knew or reasonably should have known the subject property had been sold. We disagree. Minnesota courts "have declined to adopt the discovery rule" even when confronted with arguments that it would be unfair because the injured party did not have any knowledge of the relevant facts until *after* their claim was time-barred. *Herrmann v. McMenomy & Severson,* 590 N.W.2d 641, 643 (Minn.1999) (determining that the statutory period began to run when plaintiff's claim would have survived a 12(b)(6) motion); *see also Antone,* 720 N.W.2d at 335–36 (holding that a claimant was barred by a statute of limitations from seeking dam-

ages for legal malpractice where the attorney negligently prepared an antenuptial agreement although this negligence was not discovered until the marriage was dissolved 12 years after the agreement's creation); *Molloy v. Meier*, 679 N.W.2d 711, 722 (Minn.2004) (reaffirming the "longstanding principle" that the statute of limitations for medical malpractice claims based on failures to diagnose begins to run at the time of the misdiagnosis). Rather, as explained above, Minnesota has applied the damage rule to the running of a statutory limitations period. *Dalton,* 280 Minn. at 153, 158 N.W.2d at 584.

Ignorance of the damage does not toll the limitations period unless the action involves continuing negligence, trespass, or fraud by the defendant. *Id.* at 153, 158 N.W.2d at 584. "This is upon the theory that ignorance is the result of want of diligence, and the party cannot take advantage of his own fault." *Schmucking v. Mayo,* 183 Minn. 37, 39, 235 N.W. 633, 633 (1931). In addition, Minnesota courts have declined to read a discovery requirement into a statutory limitations period because "where the legislature intends the limitation period to be contingent upon the knowledge of the aggrieved party, it has so provided." *Juster Steel,* 366 N.W.2d at 618 (quoting *Murphy v. Country House, Inc.,* 307 Minn. 344, 348, 240 N.W.2d 507, 510 (1976)). Accordingly, we decline appellants' invitation to adopt the discovery rule here.

### III.

■ Appellants argue that under the doctrine of fraudulent concealment, the limitations period here did not run while facts related to the claim were concealed from the right-holder. This issue was not presented to the district court. Generally, this court will not consider matters not argued and considered in the court below.

*Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn. 1988). And Minnesota courts have declined to address a fraud claim not presented to the district court. *See, e.g., Ketterer v. ISD No. 1,* 248 Minn. 212, 215, 79 N.W.2d 428, 432 (1956). We conclude that given the fact-intensive nature of a fraud claim, we will not address appellants' fraudulent concealment claim for the first time on appeal.

### IV.

Appellants argue in the alternative that the Marketable Title Act (MTA) provides the appropriate statute of limitations and that claims brought within 40 years are timely under the MTA. Minn.Stat. § 541.023 (1992). We disagree.

■ The MTA applies "against a claim of title based upon a source of title...." Minn.Stat. § 541.023, subd. 1. "[T]he words 'source of title' ... shall mean any deed, judgment, decree, sheriff's certificate, or other instrument which transfers or confirms, or purports to transfer or confirm *a fee simple title to real estate* ...." *Id.,* subd. 7 (emphasis added). The MTA does not operate offensively to provide foundation for new title, but defensively to protect preexisting claims of title. *Padrnos v. City of Nisswa,* 409 N.W.2d 36, 38 (Minn.App.1987), *review denied* (Minn. Sept. 23, 1987).

A "right of first refusal" is defined as a "potential buyer's *contractual* right to meet the terms of a third party's higher offer." *Black's Law Dictionary* (8th ed.2004) (emphasis added). And even when the right ripens into an option to purchase the subject property it remains "only a right *in personam* to buy at his election." *Shaughnessy v. Eidsmo,* 222 Minn. 141, 145, 23 N.W.2d 362, 365 (Minn.1946).

■ Appellants do not and cannot allege that the right-of-first-refusal agreement

granted them a fee simple interest in the subject property. Rather, appellants stated in their complaint that they "have a valid and enforceable right of first refusal on the subject property." But this right only grants the holder the option of purchasing the property if the owner of the subject property receives an offer from a third-party purchaser. *M.L. Gordon Sash & Door Co. v. Mormann,* 271 N.W.2d 436, 439–41 (1978). And even when a right of first refusal ripens into an option, this does not convey title. *See id.* at 439 ("An option to purchase land does not before acceptance vest in the holder of the option an interest in the land."). We conclude that appellant's claim is not governed by the MTA because it is not based on a "source of title" and the statute is not to be invoked offensively.

## V.

Appellants argue that the district court abused its discretion in denying their motion to amend their complaint "to add Jean V. West as a defendant and ... to clarify that the declaratory relief sought by Plaintiffs will include an allegation that the 2004 transfer from Jean V. West to the Creek House Trust was in breach of the right of first refusal." We disagree.

Amendments should be freely granted except when they would result in prejudice to the other party. Minn. R. Civ. P. 15.01. But when the amendment, if adopted, would modify the district court's scheduling order, "a showing of good cause" is required. Minn. R. Civ. P. 16.02. And a party must act with due diligence in attempting to amend its complaint. *Meyer v. Best W. Seville Plaza Hotel,* 562 N.W.2d 690, 694 (Minn.App.1997), *review denied* (Minn. June 26, 1997). The district court has broad discretion to grant or deny leave to amend a complaint, and its ruling will not be reversed absent a clear abuse of

discretion. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

Appellants did not show good cause for their delay. The district court stated "it is unclear ... why [appellants] did not include proposed Defendant Jean West in their original Complaint." Appellants knew when they filed their complaint that Ingemann had conveyed the subject property to the Wests and that the Creek House Trust was the current record owner. But appellants named only Ingemann and the Creek House Trust as defendants. Appellants did not file their motion requesting Jean West be joined as a defendant until five months after respondent trust had moved for summary judgment and nearly two months after the scheduling order's deadline to join additional parties had passed. And appellants failed to show good cause for modifying the scheduling order. On this record we conclude that the district court acted within its discretion in denying appellants' motion to amend their complaint.

## VI.

Appellants argue that the district court erred in declining to clarify the current validity of the right-of-first-refusal agreement under the Uniform Declaratory Judgments Act (UDJA). Minn.Stat. § 555.01 (2004). We agree.

"Any person interested under a ... written contract ... may have determined any question of construction or validity arising under the ... contract ... and obtain a declaration of rights, status, or other legal relations thereunder." Minn. Stat. § 555.02 (2004). "A contract may be construed either before or after there has been a breach thereof." Minn.Stat. § 555.03 (2004). The UDJA's purpose "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations;

and is to be liberally construed and administered." Minn.Stat. § 555.12 (2004).

"The main characteristic of the declaratory judgment which distinguishes it from other judgments is that, by the act authorizing it, courts are empowered to adjudicate upon disputed legal rights whether or not further relief is or could be claimed." *Ketterer*, 248 Minn. at 226, 79 N.W.2d at 439.

> A justiciable controversy exists [in a declaratory judgment action] if the claim: (1) involves definite and concrete assertions of right that emanate from a legal source, (2) involves a genuine conflict in tangible interests between parties with adverse interests, and (3) is capable of specific resolution by judgment rather than presenting hypothetical facts that would form an advisory opinion.

*Onvoy, Inc. v. ALLETE, Inc.*, 736 N.W.2d 611, 617–18 (Minn.2007). Here a declaratory judgment was appropriate because the claim of right is based in contract. In addition, the claim involves a genuine conflict between adverse parties, as indicated by the assignment to appellants and filing of the right of first refusal when appellants purchased their property, and the filing of the "lapse" document by respondent Ingemann. Finally, a declaratory judgment would resolve the dispute because the parties would know if a right of first refusal continues to encumber the subject property.

The district court granted respondent's motion for summary judgment "as a matter of law" on appellant's claim seeking declaratory judgment because "[p]ursuant to Minnesota caselaw, this claim cannot stand on its own." The district court cited *Alliance Stability v. Metro. Council* and *Vrieze v. New Century Homes, Inc.* for the proposition that a declaratory judgment is precluded unless the request is coupled with a valid additional cause of action. 671

N.W.2d 905, 916 (Minn.App.2003); 542 N.W.2d 62, 67 (Minn.App.1996). But in *Alliance Stability* the court determined that a declaratory judgment was inappropriate because a private right of action did not exist under the statute the claimants argued was violated. 671 N.W.2d at 915 n. 8. And in *Vrieze*, claimants were not entitled to a declaratory judgment because their underlying claims were barred because of the discretionary immunity doctrine. 542 N.W.2d at 67.

We conclude that although the UDJA "cannot create a cause of action that does not otherwise exist," the cases cited by the district court are not controlling because here, the district court was not required to "create" a cause of action. *See Alliance Stability*, 671 N.W.2d at 916 (discussing the UDJA). The fact that appellant's claimed breach based on the 1992 conveyance is time-barred by a statute of limitations does not determine whether appellants still have a right of first refusal.

A district court, in an exercise of its discretion, "may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." Minn.Stat. § 555.06 (2004). But here, two inconsistent documents were before the district court: the right-of-first-refusal agreement and the lapse statement. Because a declaratory judgment clarifying the right-of-first-refusal agreement's status would eliminate uncertainty, we conclude that the district court's refusal to enter a declaratory judgment constituted an abuse of its discretion. We therefore reverse the district court and remand for further proceedings clarifying the parties' current rights and obligations under the right-of-first-refusal agreement.

## DECISION

We affirm the district court's determination that appellants' claims were barred by the applicable statute of limitations and its denial of appellants' motion to amend their complaint. We reverse and remand the district court's refusal to hear appellants' request for a declaratory judgment.

**Affirmed in part, reversed in part, and remanded.**